UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ELTON THOMAS and MAMTA THAKKAR, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No.   4:07CV01159 AGF |
| CONSUMER ADJUSTMENT COMPANY, INC., | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' motion for partial summary

judgment on the issue of liability, and on Defendant's motion for summary judgment.[1]

Plaintiffs Elton Thomas and Mamta Thakkar filed this action on March 7, 2007, against

Defendant Consumer Adjustment Company, Inc. ("CACi"), a debt collector, in the

Circuit Court of St. Louis.  Plaintiffs claimed that a telephone call made by Defendant to

the Thomas/Thakkar household violated the Fair Debt Collection Practices Act, 15 U.S.C.

§ 1692 ("FDCPA" or the "Act"), and caused Thakkar extreme emotional distress.  CACi

removed the action to this Court based on federal question jurisdiction under 28 U.S.C.

§ 1331.  Pursuant to the parties' joint proposed scheduling plan, all discovery was stayed

pending the submission of cross motions for summary judgment.  The parties stipulated to

the authenticity of the four telephone recordings at issue.  For the reasons set forth below,

Plaintiffs' motion for partial summary judgment on the issue of liability shall be granted

---

[1]      The parties have consented to the exercise of authority by the undersigned United
States Magistrate Judge under 28 U.S.C. § 636(c).

in part and denied in part, and CACi's motion for summary judgment shall be denied.

## BACKGROUND

The record establishes that on March 9, 2006, a CACi employee, Philip Braswell, called the apartment that Thakkar shared with Thomas, her boyfriend.[2] Thomas was not at home at the time, and Thakkar answered the phone. The CACi employee asked, "Hi, is Elton there?" Thakkar asked who was calling, to which the employee replied, "This is Jason." From the taped telephone calls it appears that Thomas has a brother named Jason, however that fact has not been established. Thakkar said, "Oh, hi Jason. No, he's not here." The CACi employee asked, "Do you have a better number I can reach him at real quick? It's kind of important I get a hold of him." Thakkar responded that she could have Thomas call him back. The caller agreed that that would be fine, and gave Thakkar his contact information. The conversation ended with each party saying good-bye. (Joint Ex. B).

The record contains evidence of four ensuing phone calls: (1) Thakkar called the number left by the CACi employee. She asked to speak to Jason, who she said had called her, and asked "what facility" she had dialed. The employee responded that "this is CAC," and asked for the number the previous caller had dialed when he reached Thakkar. Thakkar gave the Thomas/Thakkar home phone number. Thakkar again asked, "What is your organization?" The CACi employee replied, "We're a personal business company," and then asked, "Were we looking for Elton, Martin, or Jason?" Thakkar responded that

---

[2]  Although Thakkar and Thomas have since married, this is of no legal significance to this case.

"Jason" had called looking for Elton. The employee asked Thakkar who she was, and upon hearing that Thakkar was Thomas's girlfriend, the CACi employee informed her that CACi could not release any information to her unless Thomas gave permission. Thakkar asked "Is he ok?" The CACi employee responded, "Yeah, it's fine. He's fine," and then gave Thakkar a reference code so that Thomas could call and give CACi permission to speak with Thakkar. (Joint Ex. B).

(2) Thakkar called Thomas, and according to Thomas, said that his brother had called and that it was an emergency. (Joint Ex. D).

(3) Thomas called the number left with Thakkar by the CACi employee, and gave the reference code to the employee who answered. When asked about the nature of his call, Thomas stated, "I guess it was my brother . . . [who] gave me the message." The CACi employee informed Thomas that the call was related to an outstanding bill for $295 from Washington University School of Medicine, and discussed the debt with Thomas. (Joint Ex. C).

(4) Thomas called CACi again to lodge a complaint about the call originally made to his apartment. He stated that a CACi employee had called his apartment and told Thakkar "that . . . he was my brother and that there was an emergency and to call." Thomas articulated his displeasure with the nature of the call, stating, "that definitely is not a good way to go about business." The CACi employee said that he would look into the matter, and again asked Thomas about his debt. (Joint Ex. D).

In their second amended complaint, Plaintiffs allege that the CACi caller did not indicate that he was confirming or correcting location information. They state that

3

"[b]ecause of a prior experience with a call that was an emergency, plaintiff [sic] thought [the call] was an emergency and panicked." They claim that CACi thereby violated 15 U.S.C. § 1692b. They claim further that the caller's "false statements constituted false or misleading representations creating a false sense of urgency" in violation of 15 U.S.C. § 1692e, and also constituted, in part, an improper third-party contact under 15 U.S. C. § 1692c(b). Plaintiffs allege that CACi's conduct was willful, wanton, and malicious, and that as a result of such conduct, Thakkar suffered severe emotional distress manifested through physical symptoms, and both Plaintiffs "suffered statutory damages."

As affirmative defenses set forth in its answer to the second amended complaint, CACi summarily asserted that none of the communications with Plaintiffs involved any deception, or any false or misleading statements, and that it did not have the intent that is necessary for conduct to be willful, wanton, or malicious. CACi also maintained that Plaintiffs suffered no ascertainable loss of money or property, and that they did not justifiably rely on any representation by CACi.

## DISCUSSION

**The Fair Debt Collection Practices Act**

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The FDCPA includes a specific provision with regard to third-party communications by debt collectors:

> Except as provided in § 1692b of this title, without the prior consent of the
> consumer given directly to the debt collector . . . a debt collector may not
> communicate, in connection with the collection of any debt, with any
> person other than the consumer, his attorney, a consumer reporting agency
> if otherwise permitted by law, the creditor, the attorney of the creditor, or

4

the attorney of the debt collector.

Id. § 1692c(b).

Under § 1692b, the "safe harbor" provision, a debt collector may communicate with "any person other than the consumer . . . for the purpose of acquiring location information about the consumer." Id. § 1692b. Location information is defined as "a consumer's place of abode and his telephone number at such place, or his place of employment." Id. § 1692a(7).

The Act provides that when acquiring location information pursuant to § 1692b, the debt collector shall "identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer," and shall "not state that such consumer owes any debt." Id. § 1692b(1), (2). The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt," id. § 1692a(3), and further specifies that with regard to § 1692c(b), a "'consumer' includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator." Id. § 1692c(d).

In addition, the Act states that "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This section lists examples of false or misleading representations, such as falsely representing that a debt collector is affiliated with the government, falsely representing that an individual is an attorney, and representing that nonpayment of a debt will result in arrest or imprisonment. Id. The specific example of false or misleading representations at issue here is "the use of any false representation or deceptive means to

5

collect or attempt to collect any debt or to obtain information concerning a consumer."

Id. § 1692e(10). Additionally, the Staff Commentary by the Federal Trade Commission

("FTC"), the agency charged with enforcement of the FDCPA, states that "[i]t is a

violation [of § 1692e] to send any communication that conveys to the consumer a false

sense of urgency." 53 Fed. Reg. 50097-02, at 50106 (Dec. 13, 1988).

Individual employees of debt collectors may use "desk names" or aliases in order

to protect their personal identities. The FTC states with regard to this matter that "[a]n

individual debt collector may use an alias if it is used consistently and if it does not

interfere with another party's ability to identify him (e.g., the true identify can be

ascertained by the employer)." Id. at 50103; see also Youngblood v. GC Servs. Ltd.

P'ship, 186 F. Supp. 2d 695, 700 (W.D. Tex. 2002) ("The use of a professional name or

desk name is not uncommon. Neither is it misleading so long as it refers to a particular

person.").

"A debt collector may not be held liable in any action brought under this

subchapter if the debt collector shows by a preponderance of the evidence that the

violation was not intentional and resulted from a bona fide error notwithstanding the

maintenance of procedures reasonably adapted to avoid any such error." Id. § 1692k(c).

Debt collectors may assert this "bona fide error" or "inadvertent error" defense as an

affirmative defense to avoid liability. Carrigan v. Cent. Adjustment Bureau, Inc., 494 F.

Supp. 824, 826 (N.D. Ga. 1980). "The debt collector must only show that the violation

was unintentional, not that the communication itself was unintentional." Lewis v. ACB

Bus. Servs., Inc., 135 F.3d 389, 402 (6th Cir. 1998).

Section 1692k(a) provides: "Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person" for the actual damages; "additional damages as the court may allow," but not exceeding $1,000; costs of the action; and reasonable attorney's fees.

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(b) provides that a defendant may "at any time, move with or without supporting affidavits for a summary judgment . . . ." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. Phillips v. Grendahl, 312 F.3d 357, 360 (8th Cir. 2002).

The moving party bears the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A "material" fact is one "that might affect the outcome of the suit under the governing law." Id. at 248. When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Beyer v. Firstar Bank, N.A., 447 F.3d 1106, 1108 (8th Cir. 2006).

**Plaintiffs' Claims under § 1692e**

Although neither the second amended complaint nor Plaintiffs' summary judgment filings are the model of clarity, Plaintiffs' argument appears essentially to be that by falsely representing himself as "Jason," and asking for a number where he could reach Thomas "real quick" and adding "[i]t's kind of important that I get a hold of him," the CACi caller created a false sense of urgency and used deceptive means to obtain information concerning a consumer, in violation of § 1692e.

CACi argues that because it did nothing more than request location information and because Plaintiffs admit that Thakkar's purported panic was subjective and "idiosyncratic" resulting from her own past experiences, there can be no liability under § 1692e.

In evaluating whether a debt collector has used false, deceptive, or misleading representations or means in connection with the collection of any debt or to obtain information concerning a consumer, the communication in question must be "viewed through the eyes of an unsophisticated [person]." Peters v. Gen. Serv. Bureau, Inc., 177 F.3d 1051, 1055 (8th Cir. 2002). The test, however, also "contains an objective element of reasonableness that prevents liability for bizarre or idiosyncratic interpretations of collection [calls]." Id. (citations omitted).

In the instant case, the CACi caller identified himself as "Jason." CACi concedes in its statement of uncontroverted material fact that the caller's actual name was Philip Braswell. While the Court recognizes that an employee of a debt collector may use an alias, that alias must be used consistently and must not be misleading. From simply a

8

review of the telephone calls -- the only evidence before the Court as to this fact -- it appears that during the phone call from Thakkar to CACi, the CACi employee revealed that the names Elton, Martin, and Jason were associated with Thomas's phone number. CACi does not argue that the use by the CACi caller of the name Jason was mere coincidence, or that Jason was the caller's desk name.[3]  Putting aside Thakkar's alleged emotional reaction to the call due to past experience, and giving Plaintiffs the benefit of all reasonable inferences, the trier of fact[4] could find that the CACi caller used deceptive means to obtain information concerning a consumer by falsely identifying himself using a name associated with Thomas's file, and also indirectly caused a false sense of urgency. Further, under these facts, the Court cannot find, as a matter of law, that Thakkar's reaction was simply "idosyncratic."  See Leyse v. Corp. Coll. Servs., Inc., No. 03 Civ. 8491 (DAB), 2006 WL 2708451, at *7 (S.D.N.Y. Sept. 18, 2006) (finding violations under § 1692e(10) where messages were vague enough as to purpose to provoke the recipient to return the call in haste).

CACi has not satisfied the requirements for avoiding liability based on the affirmative defense outlined in § 1692k(c), nor asserted this defense in opposition to Plaintiffs' motion.  Accordingly, the Court denies Defendant's motion for summary judgment on these claims.  See Carrigan, 494 F. Supp. at 824 (denying summary judgment to a debt collector where the debt collector "failed to provide any evidence that

---

[3]    There is no record, however, undisputed or otherwise, with respect to the caller's use of the name, or whether the caller was aware that Jason was the name of Thomas's brother or a name associated with the file.

[4]    The parties did not request a jury trial.

it maintained proper procedures to avoid the error" which led to the violation of the Act).

Although Plaintiffs might have been able, by affidavit or otherwise, to establish the facts sufficiently for this Court to rule on liability as a matter of law, they did not do so here. Thus, in light of the above, the Court believes that questions of fact remain on the issue of Defendant's liability, and Plaintiffs are therefore also not entitled to summary judgment on this claim under § 1692e.

**Plaintiffs' Claims under Sections 1692c(b)**

In support of its motion for summary judgment, CACi argues that the call by its employee did not violate § 1692c(b) because it was not a "communication" within the meaning of the FDCPA, which defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Defendant maintains that because the caller did not mention the debt, the provisions of § 1692b do not apply. CACi argues, alternatively, that if the call were a communication, the CACi caller complied with the "safe harbor" provisions of § 1692b. Finally, Defendant argues that Thakkar has no standing to sue under § 1692c(b), as only a "consumer," which Thakkar is not, has standing to sue under that section.[5] Plaintiffs argue in reply that CACi violated § 1692b as well as § 1692c(b), and that both Plaintiffs have standing to sue under § 1692b.

The Court does not find persuasive CACi's argument that the call in question was not a communication under the FDCPA. Defendant bases its argument on the fact that

---

[5]    Defendant does not question Thomas's standing to sue under this provision.

the caller imparted no information to Thakkar regarding Thomas's debt. But Defendant

admits that its employee called "to inquire regarding the status of a debt owed by

Thomas" (Defendant's Statement of Uncontroverted Facts, ¶3), and the call ultimately

ended not with a simple request for contact information, but with a telephone number at

which the debtor, Thomas, could contact Defendant. As such, the call is "in connection

with the collection of any debt," within the meaning of 15 U.S.C. § 1692c. See Foti v.

NCO Fin. Systems, Inc., 424 F. Supp. 2d 643, 656 (S.D.N.Y. 2006) (finding a

"communication" under § 1692e(b) includes contacts that do not convey specific

information about the debt; citing cases); accord Horkey v. J.V.D.B. & Assocs., Inc., 333

F.3d 769, 774 (7th Cir. 2003) (finding obscenity-laced message left with co-worker was

"in connection with the collection of a debt" under 15 U.S.C. §1692d). Defendant's

argument is also without merit for a second reason. Section 1692b prohibits a debt

collector from stating that the consumer owes any debt. If the Court were to adopt

Defendant's position, it would render portions of § 1692b superfluous.[6] See West v.

Nationwide Credit, Inc., 998 F. Supp. 642, 645 (W.D.N.C. 1998) (holding that

§ 1692c(b) does not prohibit only those third-party communications in which some

information about the debt is actually disclosed, because that reading would render

§ 1692b superfluous).

Furthermore, the Court concludes that the call in question did not comply with the

"safe harbor" provisions of § 1692b, because it did not seek to obtain, confirm, or correct

---

[6]   For example, under Defendant's reading, there would be no way for a collector who
contacted a third-party multiple times in violation of §1692b(3) to be liable.

"location information" as that term is defined by the Act. As noted above, location information is defined as "a consumer's place of abode and his telephone number at such place, or his place of employment." Id. § 1692a(7). Here the caller called Thomas's place of abode and asked for Thomas. After Thakkar told him that Thomas was not there, the caller asked for "a better number" where he could reach Thomas "real quick." The Court does not believe this constitutes a request regarding Thomas's "place of abode and his telephone number at such place, or his place of employment."[7]

As with the claims under § 1692e, CACi has not established a bona fide error defense sufficient to defeat Plaintiff's motion for partial summary judgment on these claims. Cf. Lovelace v. Stephens & Michaels Assoc., Inc., 2007 WL 3333019, at *4 (E.D. Mich. Nov. 9, 2007) (granting debt collector summary judgment on claim under § 1692c(b) where debtor called the adult debtor's place of employment and the debtor's father who answered the phone falsely identified himself as the debtor; record made clear that the communication with the debtor's father was unintentional and occurred despite procedures reasonably adapted to avoid impermissible communications). As such, the record establishes, as a matter of law, Defendant's violation of 1692c(b).

That leaves only the issue of Thakkar's standing. As CACi states, several cases

---

[7]   Likewise, the caller did not state that he was confirming or correcting location information, as §1692b(1) states one who invokes the safe harbor of §1692b "shall" do. While the Court does not suggest that debt collectors must mimic, verbatim, the language of the statute, the caller here did not substantially comply with the requirements of §1692b. One can easily see how communication of the information in §1692b(1) would have alleviated the misunderstanding that both parties seem to acknowledge in their briefs occurred here.

have held that only a consumer has standing to sue under § 1692c(b).  <u>See</u>, <u>e.g.</u>,

<u>Montgomery v. Huntington Bank</u>, 346 F.3d 693, 697 (6th Cir. 2003) (citing <u>Wright v.</u>

<u>Fin. Serv. of Norwalk, Inc.</u>, 22 F.3d 647, 649 n.1 (6th Cir. 1994) (en banc) (stating in

dicta that only a "consumer" has standing to sue for a violation of the subchapter of

§ 1692c which prohibits a debt collector from, inter alia, contacting a consumer at

unusual times or places)); <u>Mantell v. Feingold & Levy</u>, No. 96 C 1869, 1997 WL 45313,

at *3 (N.D. Ill. Jan. 30, 1997) (same).  In response, Plaintiffs amended the complaint to

allege that CACi violated § 1692b as well as § 1692c(b), and that Thakkar has standing to

sue under § 1692b.  The Court rejects Plaintiffs' assertion.  The former section provides

what a caller must do in order to have a proper third-party communication.  Non-

compliance with § 1692b is thus a violation of § 1692c(b), and not an independent

violation of the Act.

Nevertheless, the Court concludes that Thakkar, in addition to Thomas, has

standing to sue under § 1692c(b).  The cases cited by Defendant are distinguishable.  The

language in <u>Wright</u> is clearly dicta, and the third-party in <u>Martell</u> conceded she was

asserting no claims under § 1692c.  The Court is unable to determine what

"communication" formed the basis of the § 1692c claim in <u>Montgomery</u>, but there is

nothing to suggest that the plaintiff there asserted the type of damage from the actual

communication itself that Plaintiff Thakkar alleges here.

While the Court recognizes that other cases also repeat the proposition stated in

<u>Wright</u>, it is not correct that courts have "universally" taken this position, as Defendant

asserts.  In <u>Whatley v. Universal Collection Bureaus Inc. (Fla.)</u>, 525 F. Supp. 1204, 1204

& n.4 (D.C. Ga. 1981), the court specifically found standing for a claim by a third-party

under § 1692c, where, as here, the third-party was the recipient of the communication.  In

distinguishing Whatley, the court in Guillory v. WFS Financial, Inc., No. C 06-06963

JSW, 2007 WL 879017 (N.D. Cal. March 21, 2007), recognized the basis for such a

claim where the plaintiff alleges a violation of § 1692c(b), which specifically prohibits

certain communications to third-parties.  Id. at *3.  Other cases have also followed this

reasoning or recognized the need to broadly construe who may be a claimant under the

statute.  See, Conboy v. AT&T Corp., 84 F. Supp. 2d 492, 504 n.9 (S.D.N.Y. 2000);

Flowers v. Accelerated Bureau of Collections, Inc., No. 96 C 4003, 1997 WL 136313, at

* 7-8 (N.D. Ill. March 19, 1997); accord, Riveria v. MAB Collections, Inc., 682 F. Supp.

174, 175 (W.D.N.Y. 1988) (recognizing, in construing other sections, that "[a]ny person

who comes in contact with proscribed debt collection practices may bring a claim");

Dutton v. Wolhar, 809 F. Supp. 1130, 1134-35 (D. Del. 1992) (noting, construing

§ 1692e, that the legislative history of the Act supports the notion that the statute protects

people, such as family members, who may not owe money but who are negatively

impacted by proscribed debt collection practices).

    This result is also supported by the plain language of the statute as a whole.  The

cases cited by Defendant rely on the fact that § 1692c does not contain a reference, like

§ 1692d, to "any person," and that its focus is on communications with the consumer.[8]

But the focus of §§ 1692c(b) and 1692b is not *solely* on communications with the

---

[8]    The term "consumer" is more broadly defined in § 1692c(d) for purposes of this
section, to include spouses, parents of minors, guardians, executors and administrators.

consumer; it also regulates the content of the communication with third-parties and proscribes certain conduct, such as communicating with the third-party more than once. Moreover, the broad language of § 1692k(a) ("Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person . . .") strongly suggests that a third-party such as Thakkar has standing to sue under § 1692c(b). See Conboy, 84 F. Supp. 2d at 594 n.9 (noting, the "protection of the FDCPA is not limited to the statutory definition of 'consumer' under Section 1692a(3), but is broad enough to encompass 'any person' as that term is used in Section 1692k"); Whatley, 525 F. Supp. at 1204 & n.4 (same). Though a close question, under the unique facts posed here, where the third-party alleges a direct harm and actual damages from a communication proscribed by §§ 1692b and 1692c(b), the Court finds such party has standing to sue under § 1692k.

Accordingly, CACi's motion for summary judgment on Plaintiffs' claims under § 1692c(b) shall be denied, and Plaintiffs' motion for summary judgment on the issue of CACi's liability on this claim shall be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' joint motion for partial summary judgment on the issue of liability is **GRANTED** with respect to Plaintiffs' claims under 15 U.S.C. §1692(c) of the Fair Debt Collections Practices Act, but **DENIED** with respect to the claims under 15 U.S.C. §1692(e). [Doc. #15-1].

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is

**DENIED** with respect to Plaintiffs' claims under the Fair Debt Collections Practices Act.

 [Doc. #16].

      **IT IS FURTHER ORDERED** that the parties shall have twenty days to submit a

proposed scheduling order, after which time a new scheduling conference shall be set by

the Court.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2008.